COMMONWEALTH vs. ARTHUR F. ROUCOULET, JR.

Berkshire.  July 15, 1986 — July 31, 1986.

Present: GREANEY, C.J., SMITH, & WARNER, JJ.

*Evidence*, Prior conviction, Judicial discretion. *Witness*, Impeachment. *Practice, Criminal*, Impeachment by prior conviction, Judicial discretion.

At the trial of a complaint charging possession of marihuana with intent to distribute, the judge abused his discretion in admitting, for impeachment purposes, evidence of the defendant's six prior convictions of controlled substance offenses, in light of the judge's implicit reasoning that the similarity of the prior convictions to the offense for which the defendant was on trial was itself a factor entitled to probative weight, and in light of the judge's expressed view that the nature of the prior convictions might render the defendant's testimony unworthy of belief because, as a repeat offender, he would face a more severe penalty. [608-610]
This court concluded that, at any retrial of a complaint charging possession of marihuana with intent to distribute, the probability of prejudice required that the prosecution be barred from impeaching the defendant's credibility by the use in evidence of his prior controlled substance convictions. [610]

COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on July 26, 1985.

In the jury session of that division the case was tried before *Clement A. Ferris*, J.

*Thomas L. Campoli* (*David R. Cianflone* with him) for the defendant.

*Michael J. McCarthy*, Assistant District Attorney, for the Commonwealth.

GREANEY, C. J.  Following trial by a six-person jury in a District Court, the defendant was convicted of possession of marihuana with intent to distribute, G. L. c. 94C, § 32C(*a*). He was sentenced to a term of two years in a house of correction, six months of the sentence to be served and the balance sus-

pended on probation. The trial judge denied a stay of sentence pending appeal. A stay of sentence was subsequently granted by a single justice of this court. We reverse the conviction, concluding that the trial judge erred in allowing the defendant to be impeached by his prior convictions of more serious drug crimes.

The prosecution's case was based upon the testimony of an undercover police officer assigned to the special investigation unit of the Pittsfield police department. This officer testified that on April 22, 1985, at about 11:30 P.M., she met the defendant in a bar in Pittsfield. After some conversation, she asked the defendant "if he had a joint that I could buy." The defendant left for about fifteen minutes. According to the officer, when the defendant returned, he "gave me a joint" by "slid[ing] it to me, like on the side, so no one else could see it." The officer further testified that the defendant refused an offer of payment for the cigarette. No other controlled substance was exchanged. The defendant was subsequently charged with possession of marihuana with intent to distribute.

The defendant's case raised issues of misidentification and alibi. Two persons who had been identified by the undercover officer as having been in the bar at the time of the transfer of the cigarette testified that they had not been present. The defendant's wife testified that he was home with her on April 22, and that they had retired for the night at about 11:00 P.M. The defendant testified that he had never seen the undercover officer before and that on the night of April 22 he had been home with his wife and two year old daughter.

On cross-examination, the defendant was impeached by the prosecutor with prior criminal convictions for violations of the controlled substance laws. The convictions resulted from the defendant's pleas of guilty in Superior Court in Berkshire County on June 5, 1981, on six indictments which had been returned in August, 1980, more than five years before the trial of the present case. As for the defendant's criminal background, the jurors were informed by the prosecutor's cross-examination, and by introduction of the indictments in evidence, of the following:

Commonwealth *v.* Roucoulet.

| Offense | Disposition | Original sentence |
|---|---|---|
| 1. Unlawful possession of a class B controlled substance (cocaine) with intent to distribute | guilty[1] | Five to seven years, M.C.I., Walpole, committed. |
| 2. Unlawful distribution of a class B controlled substance (cocaine) | guilty[2] | same as above, concurrent |
| 3. Unlawful distribution of a class B controlled substance (cocaine) | guilty[3] | same as above, concurrent |
| 4. Unlawful possession of a class B controlled substance (methaqualone) with intent to distribute | guilty | same as above, concurrent |
| 5. Unlawful possession of a class B controlled substance (phenmetrazine) | guilty | same as above, concurrent |
| 6. Unlawful possession of a class B controlled substance (amphetamines) | guilty | same as above, concurrent |

The indictments in evidence also advised the jury of other details: that, on July 1, 1982, the sentences had been revised by the Superior Court judge who had accepted the defendant's guilty pleas, to place on file three of the cases (nos. 4, 5 and 6, above, involving possession of methaqualone, phenmet-

---

[1] The date of this offense was alleged in the indictment to be July 18, 1980.

[2] The date of this offense was alleged in the indictment to be May 22, 1980.

[3] The date of this offense was alleged in the indictment to be July 2, 1980.

trazine and amphetamines), but to leave the concurrent five-to-seven year sentences on the other three convictions in effect; that the defendant had posted $1,000 bail to gain his release prior to trial; and that there was no credit against the sentences for time in confinement pending disposition.[4]

The question whether the convictions should be allowed for impeachment was taken up by the judge at a hearing prior to trial, held in response to a motion in limine filed by the defendant's counsel, as suggested in *Commonwealth* v. *Diaz,* 383 Mass. 73, 81-82 (1981). See also *Commonwealth* v. *Gonzalez, ante* 274, 275 (1986). The motion was strenuously pressed by defense counsel in view of the alibi and misidentification issues and the need for the defendant to take the stand to get the jury to consider the issues seriously. The trial judge, while recognizing that he had discretion to exclude the convictions,[5] did not feel so inclined. To defense counsel's argument that the impeaching crimes were so similar to the offense being tried that the effect would be "devastating," and to defense counsel's observation that the age of the convictions said little about the defendant's credibility, the judge made the remarks set out below.[6] To defense counsel's further question, "How does the

---

[4] Some of this information might be considered extraneous to the impeachment, see *Commonwealth* v. *Ford,* 397 Mass. 298, 300 (1986), but we need not concern ourselves with that issue as we ultimately conclude that, on retrial, the impeachment should not be allowed.

[5] The defendant argues on appeal that, as in *Commonwealth* v. *Ruiz, ante* 297 (1986), the trial judge did not know he had discretion. The record does not support the argument. The judge's attention was specifically directed to *Commonwealth* v. *Maguire,* 392 Mass. 466 (1984), and he stated at several points in the course of the argument that he knew he had discretion. The defendant's real contention may be that the judge, while cognizant of his discretion, indicated, in substance, that he would never exercise it in favor of one accused of drug offenses. This interpretation could be placed on some of the isolated remarks made by the judge. On the whole, however, we think that the judge "knew he had discretion and exercised it in favor of the Commonwealth." *Commonwealth* v. *Knight,* 392 Mass. 192, 195 (1984).

[6] "Let me say this to you, Mr. Campoli [the defendant's counsel], you asked a question and I'll try to answer it (inaudible).

"Let's take — we have a lot of driving under cases, and we had someone here a couple of days ago (inaudible) not guilty (inaudible). (Inaudible.) And

fact that he pled guilty, your Honor, back in 1980 [defense counsel had the date wrong; it was 1981], to all these offenses suggest that he should not be believed today?," the judge gave the answer noted below.[7] Further colloquy, generally along the same line as set forth in nn. 6 and 7, culminated in the judge's ruling that the criminal convictions could come in if the defendant elected to testify. When the convictions did come in they were objected to by the defendant's counsel. See *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 7 (1986). We note finally that the prosecutor did not refer to the convictions in his final argument, no limiting instruction was requested or given when the impeachment occurred, and the judge's closing charge contained the standard instruction that the impeachment was to be used by the jury only to evaluate the defendant's credibility and for no other purpose.

---

I've heard it expressed time and time again, and a jury when they get through a session, are quite upset about the fact that they've found, in a given case, if they found the defendant not guilty, they were unaware of the fact that it was his second or third or fourth offense. I think it's giving the jury something less than that to which they're entitled. I think the jury ought to have all the evidence, and let the jury decide what the evidence suggests. I think a person who comes in and testifies, let's say it's a second or third offender, driving under, has many reasons why he doesn't want to admit to or speak truthfully about the fact that he was driving under, because the penalty of the second or third offender may be more severe.

"I think you could make an argument to that, and I think as a practical matter the juries recognize and feel cheated by the fact that they haven't been made aware, when trying a case to the Jury of Six, that the defendant was in fact before them not as a first offender but as a second or third offender. And I've had juries express that very thought, 'Judge, I think something is wrong in the way it's being done.'

"So to answer your question, Mr. Campoli, I think that it is material, on the question of whether or not a person who is in for a second or third or fourth or whatever the offense may be, there's a reason why he would be inclined to speak something less than the truth. And I think the jury is entitled to know those things.

"I think it is a question of credibility, and I think they're entitled to know all the things that may affect a person's credibility."

[7] "Well, because of the fact that he may be facing a stiffer penalty. He, in his mind, okay, he may realize he's not a first offender, in fact he's got a drug problem. What we do, as a first offender, let's say, of possession of marihuana, we order the case continued without a finding, with court costs of $50. But if in fact he's a person who is a second offender, a third offender, or what have you, the penalty is more severe."

1. The present state of the law of impeachment by prior convictions has been reviewed in recent decisions and need not be reiterated. See *Commonwealth* v. *Knight,* 392 Mass. 192, 194 (1984); *Commonwealth* v. *Elliot,* 393 Mass. 824, 833-834 (1985); *Commonwealth* v. *Gonzalez, supra* at 276-277; *Commonwealth* v. *Ruiz, ante* 297, 301 (1986). A trial judge's exercise of discretion in admitting a defendant's prior criminal convictions may be reviewed on appeal and may be reversed for abuse of that discretion. *Commonwealth* v. *Maguire,* 392 Mass. 466, 470 (1984).

In this case there was such abuse. The comments by the judge disclose two bases for his ruling. The first basis — not expressed directly but implicit, we think, in the judge's reference to the need for the jury to know about repeat offenses of like kind, such as drunken driving convictions (to use the judge's example) — is the notion that impeachment is more probative than prejudicial when there is similarity between the crime of which the defendant had been previously convicted and the crime on which he is standing trial. Such "similarity is precisely the 'unfair prejudice' to which the language of *Maguire* is directed. It is all too easy for a jury to surmise that if a defendant earlier committed a crime, he probably committed the crime for which he is being tried, particularly if the crimes are similar". *Commonwealth* v. *Guilfoyle,* 396 Mass. 1003, 1004 (1985). Admitting the convictions for this reason constituted error. *Ibid.*

The judge's second basis for allowing the impeachment — expressed directly several times — is the notion that the jury could consider the defendant's testimony unbelievable because, as a repeat drug offender, he would face a stiffer penalty. The rationale for impeachment by prior conviction lies in the fact that the defendant's past conduct may have a tendency to demonstrate present untruthfulness; that is, a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath. This point was made some time ago by Justice Holmes in *Gertz* v. *Fitchburg R.R.,* 137 Mass. 77, 78 (1884), a civil case, as follows: "[W]hen it is proved that a witness has been convicted of a crime, the *only*

ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition *alone* that the jury is asked to infer a readiness to lie in the particular case, and thence that he has lied in fact. The evidence has no tendency to prove that [the witness] was mistaken, but only that he has perjured himself, and it reaches that conclusion *solely* through the general proposition that he is of bad character and unworthy of credit" (emphasis supplied). See *Commonwealth* v. *Knight,* 392 Mass. at 195 n.2. The point remains valid today, see Advisory Committee Note to First Draft of Proposed Fed. R. Evid. 609(a), 46 F.R.D. 161, 297 (1969) ("A demonstrated instance of willingness to engage in conduct in disregard of accepted patterns is translatable into willingness to give false testimony"), and applies to criminal cases. See *Commonwealth* v. *Elliot,* 393 Mass. at 835 (Lynch, J., concurring).

We think it was a distortion of this relatively circumscribed purpose of impeachment testimony for the judge to reason as he did. In essence, he reasoned that the jury could infer present untruthfulness from the defendant's past criminal conduct through speculation that such conduct, which was more than five years old, might lead to some harsh but unspecified future punishment. Such an inference would necessarily assume more than general awareness by the jury of an unknown factor, namely, the nature of the defendant's punishment should conviction result on a charge that he possessed and gave away a single marihuana cigarette, and it would also include the additional assumption that the judge would imprison the defendant for such an offense.[8] Furthermore, admitting the convictions in this case on the rationale that the defendant was a repeat drug offender who could suffer severe punishment would necessarily inject the consequences of sentencing into the jurors' deliberations. Such consideration is prohibited "because the

---

[8] We perceive another defect in the judge's reasoning. The desire to avoid punishment is a characteristic of first time defendants as well as repeat offenders. This fact vitiates the argument that a repeat offender is more likely to lie in order to escape criminal sanctions.

jury's function is to reach a verdict based solely on the evidence presented to them considered in light of the judge's charge to them concerning the applicable legal standards." *Commonwealth* v. *Smallwood,* 379 Mass. 878, 882 (1980). See *Commonwealth* v. *Medeiros,* 395 Mass. 336, 350 (1985); *Commonwealth* v. *Burden,* 15 Mass. App. Ct. 666, 675 (1983). (See also G. L. c. 278, § 11A, inserted by St. 1967, c. 213, creating safeguards for the trial of a defendant who has been charged as a second or subsequent offender.) Indeed, it is difficult to discern how a jury could be permitted to speculate about sentencing consequences in evaluating the weight of the defendant's testimony — a process that bears directly on the verdict they reach — while they are simultaneously barred from considering sentencing in arriving at a verdict.[9] We conclude that the reasons relied upon by the judge do not warrant an exercise of discretion in the Commonwealth's favor.

2. Even if the judge presiding at any retrial were to approach the problem in a different manner, we think that the probability for prejudice as to these particular convictions outweighs any possible insight they might provide as to the defendant's credibility. The panel concludes, in the circumstances, that the impeachment is to be barred at any retrial.

3. Based on the disposition of the appeal on the impeachment issue, we need not consider the arguments the defendant makes in reliance on *Commonwealth* v. *Dougan,* 377 Mass. 303, 316-318 (1979). As for the issue raised by these arguments, the defendant will be free to pursue a motion to suppress the undercover police officer's identification testimony prior to any retrial.

*Judgment reversed.*

*Verdict set aside.*

---

[9] The proof of likely unfair prejudice in this case, on both bases relied upon by the judge, may be shown empirically by his observation, see note 6, *supra,* that some jurors in other cases who had voted to acquit defendants had told him that they would have voted to convict had they known (by way of impeachment) that the defendants had committed prior similar offenses. This is precisely the prejudice that the careful exercise of discretion is meant to obviate when similar prior offenses are involved.