COMMONWEALTH vs. LARNZIE T. PORTER.

Suffolk.   June 4, 1987. — September 14, 1987.

Present: GREANEY, C.J., DREBEN, & SMITH, JJ.

*Identification. Evidence,* Cross-examination, Redirect examination, Relevancy and materiality. *Witness,* Cross-examination, Redirect examination. *Practice, Criminal,* Argument by prosecutor, Instructions to jury.

At the trial of indictments charging aggravated rape and other serious crimes, the prosecutor's redirect examination of the victim, which attempted to show that she had been close enough to the defendant during the crimes to see him clearly, was proper in light of defense counsel's cross-examination which had, in order to discredit the victim's identification of the defendant, stressed the absence of lighting at the various crime locations; furthermore, the defendant was not prejudiced by the prosecutor's use of certain vulgar terms in pinpointing various times when the victim saw the defendant, in as much as the same terms had been used repeatedly by the victim and were used by the prosecutor to refer to the events as the victim had described them. [696]

A criminal defendant was not prejudiced by two alleged misstatements of evidence by the prosecutor in closing argument, where the first statement related to a collateral matter and any inaccuracy was adequately remedied by the judge's instructions to the jury, and where the second statement had some basis in the evidence and, in any event, the judge had instructed the jury that the evidence was what they would hear from the witnesses and not what the lawyers might argue and that the jury's recollection governed. [696-697]

Although certain remarks in the prosecutor's closing argument at a criminal trial were improperly designed to appeal to the jury to decide the case on the basis of sympathy, this court declined to order a new trial where, in light of substantial identification evidence it was doubtful that the prosecutor's remarks could have had any effect on the verdict, and where the trial judge forcefully instructed the jury that they should not be swayed by emotionalism. [697-698]

The defendant in a criminal case was not entitled to a new trial by reason of certain remarks of the prosecutor to the jury during closing argument regarding their "duty" as jurors. [698-699]

INDICTMENTS found and returned in the Superior Court Department on March 14, 1985.

The cases were tried before *J. Harold Flannery,* J.

Commonwealth v. Porter.

*Willie J. Davis* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney (*Nijole Slezas,* Assistant District Attorney, with him) for the Commonwealth.

DREBEN, J. The defendant was convicted of kidnapping, armed robbery, assault and battery by means of a dangerous weapon, and six counts of aggravated rape. The jury could have found the following facts. On late Friday, November 30, 1984, the female victim was in a parked car in Franklin Park with her boyfriend, the male victim, when a bullet and a rock came through the back window of their car. Thereafter, the passenger window was smashed with a broken golf club. The female victim saw five youths. One, whom she later identified as the defendant, and who had been called "Lorenzo," dragged her from the car. She was forced to climb a hill where she was raped by each of the five youths and was compelled to perform fellatio on each of the five. The defendant also urinated upon her.

The victim was taken to another place and again raped by the defendant, this time on a picnic table while another youth with a gun raped her anally. The episode lasted fifteen to twenty minutes. Other forced sexual assaults by one or more of the five youths followed.

The only issue at trial was the defendant's identity. He pleaded alibi, and his mother and other friends and relatives testified on his behalf.

Although the only identification came from the female victim,[1] the evidence was powerful. In her account to the police immediately after the incident, she described one of the youths, later identified as the defendant, in the same terms as she described him at trial. On the Sunday following the Friday night-Saturday morning incident, she looked through three albums of pictures each containing about three hundred photographs of black males between the ages of fifteen and twenty-five years. She pointed to the defendant's picture as "Lorenzo" and told the policeman she was one hundred per cent sure. She also identified the defendant in a line-up.

---

[1] The male victim had been placed face down on the ground and was unable to see or identify any of the assailants.

In his appeal the defendant claims that questions asked by the prosecutor went beyond the permissible scope of redirect examination and that the prosecutor's trial tactics and closing argument were so improper and prejudicial that a new trial is warranted. We disagree and affirm the convictions.

1. The defense in its questioning of the victim stressed the darkness of the locations and the absence of adequate lighting. On redirect, the prosecutor attempted to show that, at various points during her ordeal, the victim was very close to the defendant and to his face and, thus, had ample opportunity to see him clearly. Such questions were proper in light of the cross-examination by the defense attempting to discredit the victim's identification. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 375-376 (1978). In any event, the judge has discretion to allow redirect concerning matters not touched on in cross-examination. *Id.* at 375.

Although the prosecutor should have avoided the use of vulgar terms (such as "fuck" and "suck off") in pinpointing the various times when the victim could see the defendant, see *Commonwealth* v. *Smith,* 387 Mass. 900, 904, 905-906 (1983), the terms had been repeatedly used by the victim and were used by the prosecutor to refer to the events as the victim had described them. The fact that experienced defense counsel objected only on the ground that the questioning was "beyond the scope of cross" and not on the ground of the vulgarity of the terms, supports our view that the words had, by this time in the trial, lost their shock effect.

2. The defendant objects to a number of matters in the prosecutor's closing argument. He claims that the prosecutor misstated the evidence, appealed to the sympathy of the jury, and improperly told the jury "to do its duty."

There was evidence that the defendant had attended Madison Park High School in 1982 and 1983. At one point in his closing argument, the prosecutor stated that the defendant was with friends from Madison High. There was no evidence that the five youths involved in the crime attended Madison Park High School, and the prosecutor's memory was in error. We view the statement, however, as relating to a collateral matter.

Moreover, as we point out below, the judge clearly told the jury that their recollection of the evidence was what governed.

The female victim had testified, as we indicated earlier, that the assailant she recognized as the defendant had been called Lorenzo by one of the youths. The prosecutor, in pointing out coincidental similarities of the assailant and the defendant, listed, inter alia, the fact that the victim had selected the defendant's picture from such a large number of photographs, the fact that the photograph selected did not indicate height and the defendant was short — five foot three or five foot four — as was the assailant, and the fact that, like the assailant, the defendant had closely cropped hair and was clean shaven, and that "he has the uncommon, unusual nickname of Lorenzo."

Although the evidence linking the name "Lorenzo" to the defendant was not strong, and defense witnesses had testified that he was not known by this name, there was testimony from a teacher that she had, at first, called the defendant by that name and had heard students refer to him "a couple of times" by that name, albeit teasingly. In such circumstances we see no impropriety in this portion of the prosecutor's argument. In any event, the judge, before empaneling the jury, and again before any evidence was presented, informed the jury that the evidence was what they would hear from the witness stand and the exhibits, and not what the lawyers might argue. In his final instructions, he stated that it is the jury's memory that governs. "Courts and lawyers occasionally misremember the evidence when they try to repeat it to you or summarize it to you, and for that reason, the evidence . . . is exclusively as it is recollected by you."

Far more troublesome were the following statements by the prosecutor:

> "Could any of you ladies and gentlemen, could any of you after this is over walk up to [the victim] and say, 'Miss [last name of the victim], I know you went through a lot. I know you were with them for two and one-half hours. We know, [first name of victim], that you described him to a T, and we know that that unusual, uncommon

nickname they used is also the defendant's name, but we have a doubt, [first name of victim], because Mrs. Porter [the defendant's mother] sounded so sincere.' [Indicating the victim.]

"I suggest to you, Mr. Foreman, and ladies and gentlemen, the chance of a mistaken identification on these facts [is] mind boggling."

These remarks were improper and were designed to evoke the jury's sympathy. Although directed to credibility, the argument clearly exceeded proper limits. See *Commonwealth* v. *Sevieri,* 21 Mass. App. Ct. 745, 753-754 (1986).

Should a new trial be ordered because of the misconduct? On balance, we conclude that the strength of the identification plus the judge's forceful admonition to the jury not to be swayed by emotion should "preserve [the] conviction[s] in spite of the error." *Commonwealth* v. *Kozec,* 399 Mass. 514, 519 (1987).

The judge in his instructions mitigated the effect of the prosecutor's appeal to sympathy. He repeatedly called upon the jury to be as "unprejudiced," as "unbiased," as "fair," as "unemotional," as "rational," and as "reasonable" as human beings can be. He told the jury that the process should be free of "emotionalism."

The judge thus firmly rejected any appeal to passion and limited the jury's consideration to facts and not argument. More important, because of the substantial identification evidence, we do not think the prosecutor's remarks could have had any effect on the verdict. A review of that evidence, particularly the victim's unequivocal pointing to the defendant's photograph after reviewing nine hundred pictures of young black males, refutes the defendant's suggestion that the error "possibly [made] a difference in the jury's conclusions." *Commonwealth* v. *Kozec,* 399 Mass. at 518. *Commonwealth* v. *Person,* 400 Mass. 136, 142 (1987).

At another point in his argument, the prosecutor stated:

"As an individual, standing before the Bar of Justice, the law holds no hostility against Larnzie Porter. But, if proven to be a rapist, the law, the oaths that you have all taken, and public justice demand that you do your duty."

The defendant, citing *United States* v. *Young,* 470 U.S. 1 (1985), also objects to this portion of the prosecutor's argument. We see no reversible error and think the reference to the term "duty" in this case quite different from the *Young* case, *supra* at 5-6, 18, in which the prosecutor "admonished the jurors that, if they voted to acquit, they would not be 'doing your job as jurors.' " *Id.* at 21 (Brennan, J., concurring in part and dissenting in part). Also different is *United States* v. *Mandelbaum,* 803 F.2d 42 (1st Cir. 1986), another case cited by the defendant.

*Judgments affirmed.*