## COMMONWEALTH vs. WALTER J. COBB.

No. 87-652.

Suffolk.  April 13, 1988. — August 10, 1988.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Lesser included
offense, Argument by prosecutor.

On appeal from convictions on six counts of a rape of a child under age six-
teen alleged to have taken place on or about the first days of February,
April, May, July, September and November, 1984, this court held that,
where there was sufficient evidence of unconsented-to unnatural inter-
course on the November date, the judgment on the sixth count could
stand; that the judgments on the five other counts must be vacated for
lack of proof of penetration; and that, where there was sufficient proof
in each of the five other counts of the commission of a lesser included
crime (indecent assault and battery on a child under fourteen), the case
would be remanded to the trial court for appropriate resentencing.
[284-286]
At the trial of an indictment charging rape of a child under age sixteen, certain
unobjected-to comments by the prosecutor during closing argument
suggesting that the complainant would not come forward and go through
a painful· exercise merely to fabricate a story, and asking the jury to do
their duty and justify the complainant's action, although in part imper-
missible, did not create a substantial risk of a miscarriage of justice in
the circumstances. [286-288]

INDICTMENT found and returned in the Superior Court De-
partment on November 8, 1985.

The case was tried before *Herbert Abrams,* J.

The case was submitted on briefs.

*Randolph Gioia* for the defendant.

*Newman Flanagan,* District Attorney, *Nijole Slezas, &
Joseph Walker,* Assistant District Attorneys, for the Common-
wealth.

KAPLAN, J.  An indictment in six counts accused the defend-
ant Cobb of violations of G. L. c. 265, § 22A, on or about the

first days of February, April, May, July, September and November, 1984, committed upon the person of his stepdaughter (we shall call her Mary), who was short of her fourteenth birthday on the date last mentioned. Section 22A, as appearing in St. 1974, c. 474, § 2, denounces one who "has sexual intercourse or unnatural sexual intercourse with a child under sixteen, and compels said child to submit by force and against his will or compels said child to submit by threat of bodily injury." Upon trial, a jury brought in a verdict of guilty on each of the counts, and the defendant was sentenced to concurrent terms of imprisonment of nine to twelve years at M.C.I., Cedar Junction. On appeal from the judgments of conviction, the defendant argues that the judge erred in denying his motions for required findings. Also, although the defendant took no objection to the prosecutor's closing argument, he now complains of it. Upon examination of the transcript, it appears that the judgment on the sixth count may stand, for there was sufficient evidence of unconsented-to unnatural intercourse on the November date. The judgments on the five earlier counts must be reversed for lack of proof of penetration, but as there was sufficient proof in each instance of the commission of a lesser included crime, that described in G. L. c. 265, § 13B (indecent assault and battery on a child under fourteen), the case will be remanded to the trial court for appropriate resentencing.[1] After careful consideration, we hold that the prosecutor's unobjected-to closing speech, although in part impermissible, does not in the circumstances warrant reversal of the convictions.

1. The defendant came to live with Mary's mother, Mary, and a sibling when Mary was perhaps in her seventh year. Later the defendant married the mother and three children born of the union were added to the household. When Mary was in her eighth year she asked the defendant what was "sex"; he answered by taking her to a bedroom, disrobing her as well as himself, lying on top of her, and rubbing his penis against her.

---

[1] At the defendant's request, the judge had not offered the jury the opportunity to consider any lesser included offense. We conceive that this is not a bar to the remand for resentencing on G. L. c. 265, § 13B. See G. L. c. 278, § 11; *Commonwealth* v. *Pimental,* 25 Mass. App. Ct. 971, 974 (1988).

For some seven years thereafter, as often as four or more times a week, the defendant indulged himself in much the same way; on one occasion he had Mary perform fellatio upon him, and on another he performed cunnilingus upon her.[2] The defendant took advantage of periods of time when the mother was away at work or otherwise, and he managed to avoid detection by any of the children. It could well be found that Mary did not consent: at first she did not understand, later she did not know what to do; the defendant dominated her by his age and person and subjected her to beating (not severe) on slim provocation.[3]

When Mary was ten years old, she began to recognize that the sexual encounters were wrong, but not until June, 1985, when she was fourteen, could she bring herself to the crisis of telling anyone what was happening.[4] At that time, after an incident in which she felt herself maltreated by the defendant, she intimated the truth to her girl friend. This could be found to be a "fresh complaint." She went on to inform her natural father (and the police) when she visited him at his home in Arizona, and to write to her mother from that place.

The Commonwealth rested upon the testimony of Mary and her friend. The defense called the mother, attempting to weaken the case-in-chief by reference to certain statements made by the mother in a writing to the defendant's former attorney. The defendant denied all criminal wrongdoing but admitted some physical admonishment of Mary. The testimony of both these witnesses provided some basis for a suggestion (which the jury rejected) that Mary was lying out of her dislike of the defendant and her resentment of his displacing her in the mother's attentions.

---

[2] Evidence of the course of events prior to the dates mentioned in the indictment was received without objection as bearing upon the commission of the offenses charged, and no argument about this is made on this appeal.

[3] Lack of consent is required to be proved under G. L. c. 265, § 22A. See *Commonwealth* v. *Egerton,* 396 Mass. 499, 503 n.3 (1986). It was also an element of required proof under G. L. c. 265, § 13B, but by amendment of the statute by St. 1986, c. 187, "a child under the age of fourteen shall be deemed incapable of consenting" to that offense.

[4] Mary testified that the defendant warned her not to tell.

As already indicated, when it came to the specific dates mentioned in the indictment, the testimony by Mary regarding the five specific instances described only rubbing against her legs (accompanied in one instance with fondling of breasts), and it would be an unjustified straining of the testimony to say that it showed penetration (required to prove "intercourse"). On the last date there was an act of cunnilingus.

2. In his closing speech, after various commonplace arguments, the prosecutor laid stress on the courage that a young woman in Mary's position would have to summon up to testify publicly about her past life. (Mary was now fifteen.) The prosecutor was suggesting she would not come forward and go through a painful exercise merely to fabricate a story. We think this argument was rather excessive; but it did have a relation to credibility. Cf. *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 250 (1988). At the end, the prosecutor asked the jury to do their duty and justify Mary's action and her trust in the justice system; if they did their duty they would come in with a proper verdict.[5]

Such a reference to the jury's "duty," although without an explicit statement that its exercise will result in a verdict of guilty, should be held to pass the line of permissible advocacy. See *United States* v. *Young*, 470 U.S. 1, 20 (1985); *United States* v. *Mandelbaum*, 803 F.2d 42, 44 (1st Cir. 1986). Cf. *Commonwealth* v. *Porter*, 24 Mass. App. Ct. 694, 698-699 (1987). But did the utterance in the circumstances deprive the defendant of a fair trial and require reversal of the convictions? This is a troubling problem, turning as it does on the particulars

---

[5] The nub of the prosecutor's remarks here in question was: ". . . Walter Cobb dominated the life of Mary from her formative years until she finally said, this is wrong, it's got to stop. She summoned up the courage . . . to finally come forward . . . . It took an act of courage to come forward . . . . I want you, when you go up to deliberate this case, to think about whether Mary did the right thing in putting her trust in the judicial system that she would get a fair hearing . . . . Mary has put her trust in you, who are total strangers to her . . . . What she is asking, what the Commonwealth is asking is that you do your duty when you deliberate this case. Justify Mary coming forward to tell what happened to her . . . . If you do that, . . . if you do your duty, you'll come back with the proper verdict in this case . . . ."

of the individual case.[6] The recent opinion in *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987), analyzes the whole matter, and puts a series of questions useful in an evaluation process.

First, "[d]id the defendant seasonably object to the argument?" In the present case there was no objection. Thus the standard of appellate review veers against the defendant and becomes more strict — did the prosecutor's histrionics create a substantial risk of a miscarriage of justice. Moreover, the failure of defendant's counsel to object during or after argument suggests that the remarks were not sensed, in the setting of the case, as being unfairly prejudicial.

Second, "[w]as the prosecutor's error limited to 'collateral issues' or did it go to the heart of the case . . .?" Here the error was collateral in the sense that it did not strike unfairly at any evidence in the respective presentations.

Third, "[w]hat did the judge tell the jury, generally or specifically, that may have mitigated the prosecutor's mistake . . .?" Here the judge gave preliminary instructions to the jury and again instructed after the closing arguments. He said the arguments of counsel were not evidence and the jury, being the arbiters of the facts, must decide these questions on the evidence alone. Although counsel could be expected to be partial, the jurors were to be as impartial as the lot of humanity would admit them to be; they were not to be influenced by emotion, sympathy, or prejudice, nor were they to decide the case by reference to private moral standards or proprieties. They were not to be concerned about the effect of their judgment on anyone other than the defendant. This last remark could counter the prosecutor's intimation that the jury were not by their verdict to disappoint the complaining witness's trust in the system.

Fourth, "generally did the error in the circumstances possibly make a difference in the jury's conclusions?" The evidence at this trial, although not pinned to an incontrovertible fact or

---

[6] It has not been held that reference to a jury's "duty" calls for automatic reversal of a conviction in order to set a discouraging example for prosecutors.

event, made a straightforward case for conviction, and upon a reading of the transcript we think it quite unlikely that it would have made a material difference if the prosecution had hewn to a discussion of the evidence, as it should have done.

We conclude that the defendant was not deprived of a fair trial. So in *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 176-177 (1981), where the prosecutor's misbehavior resembled that complained of here ("[s]he rose to the occasion, now, please don't let her down"), the court said, "defense counsel's failure to object to the improper portions of the argument entitles the defendant to review only under the standard set forth in *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). This is not a case where the failure to object deprived the defendant of a substantial defense, nor is it one in which an objection if made would have entitled him to a mistrial. On the entire record, it cannot be said that the argument, to the extent that it went unmitigated by the judge's closing charge, produced a substantial risk of a miscarriage of justice." [7]

The judgment of conviction on the sixth count is affirmed; the judgments of conviction on the other counts are vacated; and the cause is remanded for resentencing in accordance with this opinion.

*So ordered.*

---

[7] The first factor mentioned in the *Kozec* case, whether objection was taken at the time to the prosecutor's arguments, rightly appears to be of large, if not necessarily conclusive, importance upon appellate review. In the four cases cited above where jurors' "duty" was invoked by prosecutors, appeals on the point of prosecutorial misbehavior failed. In each the defense had not been moved to register an objection when the argument was made; accordingly, the stricter standard of review applied. See *Young, Mandelbaum, Porter,* and *Harris,* all *supra.* In *Commonwealth* v. *Sevieri,* 21 Mass. App. Ct. 745, 753-755 (1986), the defense did seasonably register objection to remarks described as very similar to those in *Harris.* The judge overruled the objection and told the prosecutor to "go ahead." Our court found reversible error. The go-ahead may have put added weight on the remarks.