COMMONWEALTH *vs.* ASUNCION SANCHEZ.

Hampden.  March 7, 1989. — July 11, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Rape. Indecent Assault and Battery. Constitutional Law,* Double jeopardy,
Cruel and unusual punishment, Assistance of counsel. *Practice, Criminal,* Mistrial, Argument by prosecutor, Stipulation, Sentence, Duplicitous punishment. *Evidence,* Judicial discretion, Prior conviction.

Double jeopardy principles did not bar the second trial of a defendant whose
first trial ended in a mistrial at his request, where there was no claim
of prosecutorial misconduct or infirmities in the first trial that prejudiced
the second trial. [373-374]

A prosecutor's improper closing argument urging the jury to convict the
defendant in order to end the victim's nightmares, did not, in the circumstances, create a substantial risk of a miscarriage of justice. [375-376]

At a criminal trial, certain remarks of the prosecutor in final argument, alleged
to have been an improper appeal to the sympathy of the jurors, were
permissible as an attempt to rebut the defendant's closing argument that
the victims' stories were incredible because they did not immediately
come forward to report they had been raped. [376]

A prosecutor's final argument in support of the credibility of the Commonwealth's key witnesses did not appear to be impermissible expressions
of his personal belief. [377]

The judge at a criminal trial properly admitted in evidence a portion of a document which the defendant had stipulated was admissible. [377-378]

Evidence was properly admitted at a criminal trial that the fourteen year old
victim, after reporting he was raped, would awake at night trembling
and screaming, as that tended to show the victim did not fabricate his
story as contended by the defendant. [378]

The judge at the trial of sexual offenses against minors properly exercised his
discretion in deciding to admit the defendant's prior conviction of arson
for impeachment purposes, and to exclude his prior convictions for
sexual assault of minors. [378-379]

Two consecutive life sentences and two other concurrent life sentences for
convictions of four counts of forcible rape of three children were not
demonstrated to be unconstitutionally disproportionate to the offenses
proved. [379-380]

At the sentencing of a criminal defendant for four counts of forcible rape of three children the judge could properly consider the defendant's prior convictions of sexual offenses against minors in deciding what sentence to impose. [380-381]

In the circumstances of a criminal case, the defendant's convictions of indecent assault and battery were duplicative of his convictions for rape of a child by force, and the indictments for indecent assault and battery were to be dismissed. [381-382]

There was no merit to a criminal defendant's contention on appeal that he had been denied effective assistance of counsel at trial. [382-383]


INDICTMENTS found and returned in the Superior Court Department on May 17, 1985.

The cases were tried before *Charles R. Alberti*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Traft* for the defendant.

*Elizabeth R. Dunphy*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Asuncion Sanchez, was convicted of rape of a child by force (four convictions), indecent assault and battery on a child under fourteen (two convictions), and indecent assault and battery (one conviction). See note 8, *infra*. The defendant appeals, alleging that his trial violated the principles of double jeopardy, that the prosecutor's summation was improper, that the judge erred in his evidentiary rulings, that the sentences constitute cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution and cruel or unusual punishment under art. 26 of the Declaration of Rights of the Massachusetts Constitution, that his convictions for some of the crimes are duplicative and therefore violate principles of double jeopardy, and that he was denied the effective assistance of counsel. We transferred the cases to this court on our own motion. We affirm the defendant's convictions for rape of a child by force. However, we also conclude that the defendant's convictions of indecent assault and battery impermissibly duplicate his convictions of rape of a child by force and must be dismissed. We therefore reverse the defendant's three convictions of indecent assault and battery.

We summarize the evidence in the light most favorable to the Commonwealth. The defendant, a vacuum cleaner salesman, knew three minor boys whom we shall call Alberto, Benjamin, and Christopher.[1] The boys were friendly with each other. Benjamin and Christopher are cousins; Christopher's mother lived with the defendant's brother. One Saturday early in April, 1985, the defendant invited Alberto to come with him to sell a vacuum cleaner. The defendant spent some time with Alberto making unsuccessful sales calls, watching television at the home of the defendant's cousin, and eating at a McDonald's restaurant. The defendant arrived at his apartment together with Alberto, and invited Alberto into his bedroom to fill out a job application for the vacuum cleaner company. Alberto sat on the defendant's bed, holding a job application in his lap. The defendant sat beside Alberto on the bed and twice tried to unzip Alberto's pants. The first time Alberto became scared and walked into the bathroom. The second time Alberto went to get a drink of water. When Alberto returned, the defendant put his hand down Alberto's pants, removed Alberto's pants and underwear, and turned Alberto over on his stomach. The defendant spit on his finger and placed the finger in Alberto's rectum. After some time, the defendant spit on his own penis and inserted it into Alberto's rectum. Afterward, the defendant drove Alberto to a street near Alberto's house. The defendant warned Alberto not to say anything about what had happened.

In the middle of April, the defendant met Benjamin at Christopher's house. The defendant invited Benjamin to go to the store, and Benjamin agreed. On the way, the defendant said he had forgotten something at his apartment. On their arrival at the defendant's apartment, the defendant pushed Benjamin into the bedroom and onto the bed. He removed Benjamin's pants and touched Benjamin's penis. The defendant turned Benjamin over and placed his penis into Benjamin's rectum. Afterwards, the defendant offered Benjamin five dollars, but Benjamin refused and ran home.

---

[1] The names assigned to these victims are fictitious. At the time of the rapes, Alberto was fourteen, Benjamin and Christopher were thirteen.

On another day in April, the defendant met Christopher and invited him to go to the store. As they were driving away from the store, the defendant claimed he had forgotten something at his apartment. The defendant and Christopher went to the apartment, and the defendant told Christopher that he wanted to show him something in the bedroom. They went into the bedroom and the defendant pushed Christopher onto the bed. Christopher struggled vigorously with the defendant as he tried to hold Christopher down and undo his pants. Eventually, the defendant pulled Christopher's pants down and placed his penis into Christopher's rectum. Christopher then pushed the defendant off and ran out. The defendant followed in his car, caught up with Christopher, and warned him not to tell anyone what the defendant had done.

Until April 27, 1985, Alberto and Benjamin did not tell anyone, including one another, that they had been raped. On that day, the defendant came to Alberto's home to speak to Alberto's mother. When the defendant arrived, Alberto acted strangely, ran upstairs and locked himself in his room. Later that day, Alberto came up to his mother. He hugged her and started to cry. He described the details of the rape to his mother. Alberto and his parents went to see their parish priest, and later went to the police. The next day, Alberto's mother was crying because of what had happened to her son. Benjamin, a friend of the family, saw her crying. Although Alberto's mother refused to explain to Benjamin why she was crying, Alberto himself told Benjamin the reason. Benjamin then told Alberto that the defendant had raped him also. Alberto's mother took both boys to the police station, and also went to Christopher's house to pick up Christopher and his mother. Alberto's mother took all three boys to the hospital for tests. Alberto and Benjamin had contracted rectal gonorrhea. Christopher had not.

The defendant was arrested after Alberto gave his statement describing the rape to the police. While the defendant was in jail, medical tests showed that he was not suffering from gonorrhea. His medical record also indicated that the defendant stated that he had been taking penicillin. Penicillin is used to cure gonorrhea. The defendant testified and denied the charges.

1. *Double jeopardy*. The defendant's first trial ended when the judge granted the defendant's motion for a mistrial. The defendant argues on appeal that the second trial violated his right to be free from double jeopardy.[2] We do not agree.

At the defendant's first trial, the Commonwealth called as its first witness, Dr. Barbara Stechenberg, an expert who testified about urethral and rectal gonorrhea. Defense counsel began his cross-examination of Dr. Stechenberg, but could not complete it that day due to the judge's schedule. The next day, the prosecutor informed the judge that the witness was unavailable because of her schedule. The prosecutor moved for a mistrial. The judge denied the prosecutor's motion in order to explore various courses of action with defense counsel and the defendant. Afterwards, defense counsel conferred at length with the defendant, exploring the various possibilities.

Defense counsel discussed with the defendant the possibility of going forward with the trial until the witness returned, suspending the trial until the witness returned, or moving for a mistrial. Defense counsel recommended a mistrial as the least oppressive choice, and the defendant agreed. When counsel returned to court to move for the mistrial, the judge asked him to make sure the defendant knew that the trial could go forward with the testimony of all other witnesses until Dr. Stechenberg returned. Defense counsel went back to the defendant and explained the judge's suggestion. He also informed the defendant that he would "essentially, by moving for the mistrial under these circumstances, be waiving your right to claim double jeopardy. You couldn't claim double jeopardy then." The defendant then moved for a mistrial, and the judge allowed his motion.

"Usually a mistrial granted upon the defendant's request does not present a bar to retrial on double jeopardy grounds. . . .

---

[2] The defendant did not make this argument to the trial judge prior to his second trial. See *Berry* v. *Commonwealth*, 393 Mass. 793, 794 (1985). Courts are divided on whether the failure to raise the issue prior to the second trial is a waiver. See *Commonwealth* v. *Deeran*, 397 Mass. 136, 141 n.5 (1986). Because we conclude the issue has no merit, we do not discuss waiver.

[However, when] a defendant's motion . . . for a mistrial based upon 'prosecutorial misconduct' is allowed, the double jeopardy clause may be a bar to further prosecution." *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 310-311 (1984). See *Commonwealth* v. *Andrews*, 403 Mass. 441, 447-448 (1988), quoting *Oregon* v. *Kennedy*, 456 U.S. 667, 682-683 (1982) (Stevens, J., concurring). The defendant has the burden of showing that prosecutorial misconduct induced him to move for a mistrial. *Commonwealth* v. *Andrews*, *supra* at 448. The record does not support a claim that the prosecutor's behavior at the first trial met the level of prosecutorial misconduct needed to invoke Federal and State constitutional protections. See *Oregon* v. *Kennedy*, *supra* at 683; *Commonwealth* v. *Andrews*, *supra*. The defendant also does not argue that his second trial was prejudiced by any infirmity in his first trial. See *id.* at 446.

The defendant asserts, however, that the principles of double jeopardy bar his retrial because he was not informed by his counsel or by the judge of every possible option available to him to avoid a mistrial. Specifically, he complains that no one informed him that the trial could go forward and that Dr. Stechenberg's testimony would be struck if she did not return by the close of the Commonwealth's case. The defendant analogizes to cases where the mistrial is granted over the defendant's objection and argues that the "failure to consider available alternatives before declaring a mistrial" may result in dismissal of the charges against him on double jeopardy grounds. See, e.g., *Jones* v. *Commonwealth*, 379 Mass. 607, 612 (1980). There is no support for the proposition that the failure of defense counsel and the judge to think of all possible choices before the defendant moves for a mistrial bars a retrial. Further, the same considerations advanced by defense counsel in favor of a motion for a mistrial (fear that the jury would consider Dr. Stechenberg's damaging testimony and accept it before cross-examination) still would be present, even if striking Dr. Stechenberg's testimony were mentioned. There was no error in allowing the defendant's second trial to go forward.

2. *The prosecutor's summation.*[3] The defendant argues that the prosecutor made improper closing arguments which necessitate a new trial. At trial, the defendant did not object to the prosecutor's argument, or request curative instructions. We therefore review the argument to determine whether there was an error which created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Richmond*, 379 Mass. 557, 563 n.4 (1980). *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

At the end of his argument, the prosecutor made an unnecessary and improper statement in which he urged the jury to convict the defendant in order to end the victims' nightmares.[4] This comment was the equivalent of an exhortation that the jury had a duty to the victims to render verdicts of guilty. "Such a reference to the jury's 'duty,' [even] without an explicit statement that its exercise will result in a verdict of guilty, should be held to pass the line of permissible advocacy." *Commonwealth* v. *Cobb*, 26 Mass. App. Ct. 283, 286 (1988). See *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 753 (1986); *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 176 n.9 (1981). However, we cannot say that the prosecutor's statement created a substantial risk of a miscarriage of justice.

The fact that the defendant did not object, "[a]lthough not dispositive of the issue . . . is some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985). The prosecutor's remarks did not strike unfairly at any evidence constituting a

---

[3] Appellate counsel for the Commonwealth was not trial counsel.

[4] "You know, ladies and gentlemen, when you return a verdict in this case, you don't do it out of sympathy for anyone, you don't do it out of a negative feeling for anyone, all you will do is dispassionately, to the best of your ability as human beings, speak the truth. That's all we are asking for, as we suggested to you in the opening and I am suggesting it again now. We all appreciate and realize that these three boys have lived through hell for a year. That's not a reason for returning a verdict. But I can tell you this, the hell and associated nightmares these kids have had and living in the nightmare over the year can be put aside by only one thing, the truth, and that is what it is your job to do. This man is guilty as charged."

part of the defendant's defense. See *Commonwealth* v. *Cobb*, *supra* at 287. Finally, "[t]he evidence at this trial, although not pinned to an incontrovertible fact or event, made a straightforward case for conviction, and upon a reading of the transcript we think it quite unlikely that it would have made a material difference if the prosecution had hewn to a discussion of the evidence as it should have done." *Id.* at 287-288. Because the prosecutor's improper argument did not cause a substantial risk of a miscarriage of justice, a new trial is not required.

Defense counsel in his closing strenuously argued that the victims' stories were incredible because all three waited so long to tell anyone about the rapes. In a portion of the Commonwealth's closing set forth in the margin,[5] the prosecutor argued that the victims did not come forward to accuse the defendant immediately because they had been traumatized by the rapes. Based on the evidence the prosecutor graphically described how they had been traumatized, and stated rhetorically that the jury should put themselves in the place of the victims. Although this line of argument may evoke sympathy for the victims, the argument went to the issues in the case and was "based on what the jury saw and heard." *Commonwealth* v. *Kozec*, 399 Mass. 514, 521 (1987). "To the degree the recitation of the evidence was inflammatory, that was inherent in the odious . . . nature of the crimes committed." *Commonwealth* v. *Ingram*, 14 Mass. App. Ct. 999 (1982). The prosecutor "may have been close to the line in asking the jury to put themselves in the victim[s'] position," *Commonwealth* v. *Thomas*, 400 Mass. 676, 684 (1987), but his comments were an attempt to explain why the victims did not come forward immediately.

---

[5] "You know, it's very easy to stand up here smugly, Why didn't they five, ten, fifteen minutes after having this horrible experience thrust upon them, run to mom or dad or their brother? You know something, ladies and gentlemen? Can you think of anything that could be worse in your life than to have someone control your body in a sexual manner? Can you think of any greater violation? Imagine what you would feel emotionally and psychologically if some man did that to you women or if some man did that to you men, as a result of being held down or overpowered by someone who had a size, experience and age difference over you if you were a child. Can you imagine what a young kid goes through when that type of thing is thrust upon him?"

The defendant also argues that the prosecutor impermissibly expressed his personal opinion on the credibility of the Commonwealth's witnesses. As we read the argument, for the most part, the prosecutor argued that the circumstances and the evidence permitted the jurors to find the three young men credible. The prosecutor's statements on credibility in that context "are blameless in that they do not appear to interject a personal belief in the credibility of the various witnesses . . . . Rather, they represent an argument in support of the credibility of the Commonwealth's key witnesses, based on the demeanor and motive of the witnesses and the consistency of their stories." *Commonwealth* v. *Stone*, 366 Mass. 506, 516 (1974). See *Commonwealth* v. *Daigle*, 379 Mass. 541, 550 (1980).

3. *Evidentiary rulings.* a. The defense called the director of medical services for the Hampden County sheriff's department as a witness. On direct examination, the witness read from a document concerning a medical examination of the defendant while he was in jail. The parties had stipulated that the records could be admitted as a business record. Reading from the document, the witness testified that the defendant did not have gonorrhea. On cross-examination, the prosecutor elicited testimony from the witness that the same record indicated that the defendant had been taking penicillin, which is used to cure rectal gonorrhea.

The defendant argues that the judge improperly admitted that part of the document which showed that the defendant had taken penicillin. This argument is wholly without merit. The defendant is bound by his stipulation that the document is admissible unless the court vacates it as improvident or not conducive to justice. *Pastene Wine & Spirits Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 612, 615 (1988). *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 114 (1973). *People* v. *Baynes*, 88 Ill. 2d 225, 239 (1981). Cf. *Commonwealth* v. *Walker*, 392 Mass. 152, 159 (1984) (polygraph test results of a nonparty witness not admissible even by stipulation). In light of the defendant's stipulation as to the admissibility of the evidence, and the use to which he put the evidence, the judge was correct in admitting in evidence the other portion

of the document.[6] The judge was not required to permit the defendant to offer in evidence that which aids him and keep from the jurors that which tends to aid the prosecution. See *Nonni* v. *Commonwealth*, 356 Mass. 264, 267 (1969); *Noble* v. *Fagnant*, 162 Mass. 275, 286 (1894).

b. The defendant argues that the judge erred by allowing Alberto's mother to testify, over objection, that, after Alberto had reported the rape to the police, he would awake at night trembling and screaming. The defendant argues that admission of this testimony was unduly prejudicial. We disagree. "Whether such evidence was so inflammatory in nature as to outweigh its probative value and preclude its admission is a question to be determined by the trial judge in the exercise of his sound discretion." *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279 (1962). See *Commonwealth* v. *Todd*, 394 Mass. 791, 797 (1985). The evidence was admitted because it tended to show that the victim did not fabricate his story of being raped, as the defendant contended at trial. Alberto's mother was only permitted to testify as to her observations of Alberto. The judge did not abuse his discretion by admitting this evidence.

c. The defendant argues that the judge erred by allowing the prosecutor to impeach the defendant's credibility with his prior conviction of arson. See G. L. c. 233, § 21 (1986 ed.). We do not agree. "The question on appeal will normally be whether there was an abuse of discretion in admitting evidence of a prior conviction because the danger of unfair prejudice

---

[6] There is also no merit to the defendant's argument that the part of the document which showed that he had been taking penicillin should have been excluded because there was no evidence he voluntarily and knowingly waived the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), before this medical information was obtained. The information was obtained not by the police but by a county nurse who acted as a private citizen in conducting a routine medical inquiry. See *Commonwealth* v. *Allen*, 395 Mass. 448, 453 (1985). Because the records were admitted by stipulation, there is similarly no merit to the defendant's argument that the document does not comply with the standards of G. L. c. 233, § 79 (1986 ed.), for medical records. Finally, the defendant's claim that this medical information is confidential has no merit because the defendant himself offered portions of his medical record in evidence.

outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment." *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984). The judge carefully excluded the defendant's prior convictions of crimes involving homosexual rapes of minors and admitted for impeachment purposes the conviction of a crime dissimilar to the ones being tried. We have recognized that "a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath." *Commonwealth* v. *Fano*, 400 Mass. 296, 302-303 (1987), quoting *Commonwealth* v. *Roucoulet*, 22 Mass. App. Ct. 603, 608 (1986). See *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 855 (1988); *Commonwealth* v. *Walker*, 401 Mass. 338, 346 (1987). The judge properly exercised his discretion in deciding to admit the defendant's prior conviction for arson and not his prior convictions for sexual assault of minors.

4. *Sentencing*. The defendant argues that the imposition of two consecutive life sentences and two other concurrent life sentences for his convictions of four counts of forcible rape of a child constitutes unconstitutional punishment within the meaning of the Eighth Amendment to the United States Constitution and cruel or unusual punishment under art. 26 of the Declaration of Rights of the Massachusetts Constitution. He argues that the punishment is disproportionate to the crimes. We do not agree with his argument.[7]

"This court has recognized that it is possible that imprisonment for a long term of years might be so disproportionate to the offense as to constitute cruel and unusual punishment." *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 496 & n.2 (1981), citing *McDonald* v. *Commonwealth*, 173 Mass. 322, 328 (1899), aff'd, 180 U.S. 311 (1908). However, because

---

[7] "[I]t is not within the power of this court to review an otherwise lawful sentence. This authority is delegated to the Appellate Division of the Superior Court under G. L. c. 278, §§ 28A-28C." *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 (1984). The defendant appealed his sentences to the Appellate Division, which dismissed his appeal. Nevertheless, we have the power to review the sentences to determine whether they are unconstitutional. See, e.g., *Commonwealth* v. *Therriault*, 401 Mass. 237, 240 (1987); *Commonwealth* v. *Jackson*, 369 Mass. 904, 910-913 (1976).

the Legislature is given broad discretion in determining the punishment for a given offense, the burden is on the defendant to prove such disproportion. *Cepulonis* v. *Commonwealth, supra* at 497, and cases cited. See *Commonwealth* v. *Longval,* 378 Mass. 246, 252-253 (1979).

The defendant properly does not argue that the statutory punishment of life imprisonment for a conviction of rape of a child by force itself constitutes unconstitutional punishment. In cases in which children are raped, the psychological trauma of the victims can cause enormous harm to the victims and to society. The defendant argues, however, that the cumulative effect of the sentences imposed, which exceed the recommended Superior Court guidelines for the defendant's crimes, constitutes unconstitutional punishment. We do not agree. Here, the record reflects that the defendant subjected the victims to psychological harm and infected Alberto and Benjamin with rectal gonorrhea. The evidence also indicates that the victims may be stigmatized in the community in which they live for having been raped by a man. The sentences imposed do not "shock[ ] the conscience and offend[ ] fundamental notions of human dignity." *Commonwealth* v. *Jackson,* 369 Mass. 904, 910 (1976), quoting *In re Lynch,* 8 Cal. 3d 410, 424 (1972).

5. *The prosecutor's comments at sentencing.* The defendant argues that, even if the sentences are constitutional, he should be resentenced because the prosecutor set forth the details of his prior offenses. The defendant asserts that the judge may have acted on the prosecutor's detailed description of the defendant's prior sexual offenses and that those comments were unfair and improper. The defendant did not object to these remarks at the hearing, nor did he ask the judge to strike them. Assuming without deciding that there is an appellate issue properly before us, see, e.g., *Commonwealth* v. *Longval, supra* at 252-253, and assuming without deciding that the prosecutor's remarks were improper, we consider the prosecutor's remarks to determine whether they created a substantial risk of a miscarriage of justice. We conclude that they did not.

The circumstances of the offenses against Alberto, Benjamin, and Christopher were so violent and shocking that resentencing

is not required. The judge carefully tailored the sentences to fit the seriousness and apparent harm of the crimes. Alberto and Benjamin testified consistently at trial, and both contracted gonorrhea. The judge imposed two consecutive life sentences for these rapes. Alberto was raped a second time with the defendant's finger; and Christopher testified equivocally at trial and did not contract gonorrhea. The judge imposed concurrent sentences for these rapes, where the harm appeared less serious. The judge properly could consider the defendant's prior convictions in deciding what sentence to impose. *Commonwealth* v. *Coleman*, 390 Mass. 797, 805 (1984). *Commonwealth* v. *Franks*, 372 Mass. 866, 867 (1977). *Commonwealth* v. *Le-Blanc*, 370 Mass. 217, 224 (1976). *Commonwealth* v. *Celeste*, 358 Mass. 307, 310 (1970). *Letters* v. *Commonwealth*, 346 Mass. 403, 405 (1963). "[T]he judge could conclude, and obviously did, that the defendant was a confirmed and dangerous offender." *Commonwealth* v. *Longval, supra* at 253.

6. *Duplicative sentences.* The defendant also argues that his convictions for indecent assault and battery were duplicative of his convictions for rape of a child by force and therefore violate his right to be free from double jeopardy. We agree.

"[I]ndecent assault and battery is a lesser included offense of forcible rape . . . ." *Commonwealth* v. *Egerton*, 396 Mass. 499, 503 n.3 (1986). For Alberto and Christopher, the crime of indecent assault and battery and the crime of rape of a child by force were "so closely related in fact as to constitute in substance but a single crime." *Commonwealth* v. *Thomas*, 401 Mass. 109, 120 (1987), quoting *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979). In connection with the rape of Benjamin, the indecent assault and battery could have been held to constitute a wholly separate act (and thus not a lesser included offense) because the defendant first touched Benjamin's penis before inserting his own penis into Benjamin's rectum. See *Commonwealth* v. *Fitzpatrick*, 14 Mass. App. Ct. 1001, 1003 (1982). The Commonwealth does not argue, however, that it was a wholly separate act. The judge did not instruct the jury that the convictions must be based on separate acts. Thus, we conclude that we should not treat that conviction

differently from the other indecent assault and battery convictions. "Considering the law of the case as the judge instructed the jury, the jury may well have convicted the defendant[ ] of . . . indecent assault and battery based on the same acts or series of acts." *Commonwealth* v. *Thomas*, 400 Mass. 676, 681-682 (1987). In such a situation, even if the defendant does not object to the duplicative convictions below, "the defendant cannot properly be sentenced both for rape and the lesser included offense. Therefore, the indictment[s] for indecent assault and battery should be dismissed." *Commonwealth* v. *Thomas*, 401 Mass. 109, 120 (1987), citing *Commonwealth* v. *Jones*, 382 Mass. 387, 394-395 (1981).[8]

7. *Effective assistance of counsel*. The defendant argues that the performance of his trial counsel denied him effective assistance of counsel. In order to prevail on such an argument, the defendant must show that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant has not met his burden.

The defense counsel failed to object to the improper remarks made by the prosecutor in his closing argument. Failure to object to an argument does not necessarily constitute ineffective assistance of counsel. See *Commonwealth* v. *Bernier*, 359

---

[8] The defendant also was convicted of assault and battery (two convictions). Those indictments were placed on file with the defendant's consent. The defendant asks us to dismiss these indictments because they are duplicative of his indictments for rape of a child by force. The Commonwealth does not argue that they are not duplicative. "Absent exceptional circumstances, we do not consider appeals . . . on indictments placed on file since no appeal may come before us until after judgment, which in criminal cases is the sentence." *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). Because we discern no exceptional circumstances in this case, there is no appeal before us from these convictions. *Commonwealth* v. *Sanchez*, 403 Mass. 640, 641 n.1 (1988). Nevertheless, the trial judge may, on motion of the defendant, take these convictions from the file and dismiss them.

Mass. 13, 18 (1971). As we stated above, the prosecutor's improper comments (and, thus, the defense counsel's failure to object) did not strike at the heart of the defendant's case. This lone mistake, therefore, does not "deprive[ ] the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra*. Cf. *Commonwealth* v. *Street*, 388 Mass. 281, 284, 285-288 (1983); *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 271-274 (1983). Instead, the mistake merely demonstrates that the defense counsel, like all counsel, is an "ordinary fallible lawyer." *Commonwealth* v. *Saferian, supra*. The defendant had the full benefit of effective assistance of counsel at trial.

The defendant points to the failure of his counsel to explain to him the choice of striking Dr. Stechenberg's testimony. Because we conclude that argument has no merit, the claim that his counsel was ineffective because he failed to explain that choice is also without merit.

The judgments on the two convictions of indecent assault and battery on a child under fourteen, and on one conviction of indecent assault and battery, are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for dismissal. The judgments on the four convictions of rape of a child by force are affirmed.

*So ordered.*