UNITED STATES of America, Appellee,

v.

Bridget M. MANDELBAUM,
Defendant, Appellant.

No. 86–1079

United States Court of Appeals,
First Circuit.

Argued Sept. 3, 1986.

Decided Oct. 15, 1986.

As Amended Oct. 24, 1986.

Owen S. Walker, Federal Public Defender, Boston, Mass., for defendant, appellant.

Kevin F. Driscoll, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

GENE CARTER, District Judge.

The appellant, Bridget M. Mandelbaum, was convicted by a jury of theft of government property in violation of 18 U.S.C. § 641. Appellant was acquitted on four counts of willfully making false statements on applications for housing benefits in violation of 18 U.S.C. § 1001. Appellant argues that prosecutor's statement to the jury using the words "Do your duty and return a verdict of guilty" constituted reversible error. We conclude that although the prosecutor's exhortation was improper, it did not cause substantial prejudice warranting reversal.

The government's evidence was as follows. In January 1976, defendant Bridget M. Mandelbaum applied for "Section 8" housing benefits, made available by the United States Department of Housing and Urban Development to assist qualifying low income tenants in paying rent and utility bills. Homeowners are not eligible to receive these benefits. In February 1976, the defendant and a man named Andrew Klein purchased a home as tenants in common, with the defendant using the name Bridget Hayes throughout the transaction, and again using the name Bridget Hayes on the notice of transfer, the assignment of tax reserve account, and the tax records.

Subsequently, the defendant signed the name Bridget Mandelbaum to a twelve-month lease with Mr. Klein as lessor, agreeing to pay rent of two hundred thirty-five dollars ($235.00) per month to reside at the home in which she had a concealed ownership interest. She then signed a housing assistance payments contract with the Lexington Housing Authority, arranging for monthly payments of One Hundred Fifty Dollars ($150.00) to be made to Andrew Klein. During the period with which this case is concerned, October 1, 1980 to November 1, 1982, the defendant would routinely receive the Authority's housing assistance check, endorse it by printing "Andrew Klein" on the back, and deposit it

into a joint account she maintained with Klein under the name Bridget Hayes. That day or the next, she would transfer the money into an individual account that she also held under the name of Bridget Hayes. The parties stipulated that a handwriting expert would have testified that the signatures of Bridget Mandelbaum and the signatures of Bridget Hayes, as well as the printed endorsements of Andrew Klein, were the writing of the defendant. During the period in question, defendant signed three recertification documents for the Authority indicating that she had no assets; at no time did she disclose ownership of the house. Also three times during this period defendant certified to the Authority that she had no income from employment, despite the fact that during each of the periods covered by the certifications she was employed full-time by Blue Cross/Blue Shield of Massachusetts.

After the prosecution finished its case, the defense rested without presenting any evidence. After closing arguments, the jury found the defendant guilty of stealing government funds but not guilty on each of the four counts of willfully making false statements.

With this background in mind, we turn to the basis for appellant's appeal. The prosecutor ended her argument as follows:

I think, ladies and gentlemen, that when you finish examining all these materials, you will be able to find, I suggest to you, that there is ample evidence there for you to find beyond any reasonable doubt that Bridget Mandelbaum-Hayes did in fact commit the acts that the government charges her with. And I would ask you, therefore, to do your duty and return a verdict of guilty. Thank you.

The defense made no objection to this statement at the time. In his own final argument to the jury, the defense attorney argued that the government had "not shown you sufficient evidence by which you would be warranted in returning a verdict of guilty and, therefore, as you

* Of the District of Maine, sitting by designation.

have taken an oath as jurors, it's your responsibility to find Ms. Hayes not guilty." After the prosecutor's rebuttal argument, defense counsel requested a side-bar conference, argued that the prosecutor's exhortation to the jurors to do their duty and convict the defendant was improper, and asked for a corrective instruction.[1] The court refused to give such an instruction and, apparently referring to the defense's statement suggesting that the jurors had a responsibility to find the defendant not guilty, said that it would be inappropriate to call attention to either argument because "if there is a difference between [the two arguments], defense argument in this case is more subject to instruction than the government's argument."

In giving general jury instructions, the court repeated several instructions that had also been given at the opening of trial. These included instructing the jury that it must be guided only by the court's instructions on the law, that the defendant is presumed innocent until proven guilty beyond a reasonable doubt, and that the government has the burden of proof beyond a reasonable doubt. Jurors were also instructed that arguments of counsel are not evidence or instructions, and that if the jury is convinced of the defendant's guilt beyond a reasonable doubt, it must return a verdict of guilty and that if a reasonable doubt remains, it must find the defendant not guilty.

■ In *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court found that a prosecutor had erred in urging a jury to "do its job." The Court said that, "That kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice, *see, e.g.,* ABA Standards for Criminal Justice ... 3–5.8(c) and 4–7.-8(c)."[2] *Id.* at 17, 105 S.Ct. at 1048. We see no difference between urging a jury to do its job and urging a jury to do its duty, and we find that the prosecutor erred in making such an exhortation. Cases are to be decided by a dispassionate review of the evidence admitted in court. There should be no suggestion that a jury has a duty to decide one way or the other; such an appeal is designed to stir passion and can only distract a jury from its actual duty: impartiality.

■ Having found error, we must determine whether the error was such that it influenced the jury to stray from its responsibility to be fair and unbiased. *United States v. Young,* 105 S.Ct. at 1048. As the Supreme Court said in *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), "The question a reviewing court must ask is this: absent the prosecutor's allusion ... is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *Id.* at 510–11, 103 S.Ct. at 1981. In *United States v. Capone,* 683 F.2d 582 (1st Cir.

---

1. We find that the defense's request was sufficiently timely to preserve the issue for appeal. One of the reasons that the contemporaneous objection rule exists is to insure that the trial judge can correct misperceptions that the jury may have before they retire to deliberate. Although defendant's objection should have been made earlier, it was still made before the jury retired and in time for the judge to take corrective action if he had felt it was necessary. A stricture governing the timing of objections "should not be employed woodenly, but should be applied where its application would serve the ends for which it was designed. If it be applied blindly and without the benefit of analysis of particular fact situations before individual courts in specific cases, it will be transformed from a sound principle of judicial administration into a trap for the un-

wary...." *United States v. Currens,* 290 F.2d 751, 759 (3d Cir.1961). *See also United States v. Pool,* 660 F.2d 547 (5th Cir. 1981); *United States v. Dorr,* 636 F.2d 117 (5th Cir.1981).

2. ABA Standards for Criminal Justice at 3–5.-8(c) provides that "the prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury." Section 4–7.8(c) directs the same injunction at all lawyers. In addition, section 3–5.8(d) provides that "[t]he prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law...."

1982), the First Circuit held that in cases where a prosecutor has made an improper remark a new trial will be required only if the misconduct is likely to have affected the trial's outcome or if a sanction is needed to deter future prosecutorial misconduct.[3] In making such a judgment, the court said it is necessary to look at the severity of the misconduct, whether it was deliberate or accidental, the likely effect of any curative instruction, and the strength of the evidence against the appellants. *Id.* at 585–86.

The prosecutor's remark in this case was improper, but we do not find that it constituted severe misconduct.[4] The prosecutor's comment was isolated and not part of a recurring theme, *see Capone,* 683 F.2d at 586; *United States v. Cox,* 752 F.2d 741, 746 (1st Cir.1985). It does not appear to have been an intentional effort to influence the jury in an improper way, and it was not flagrant in its effect. The remark was not even objected to by the defense until after the defense's own closing statement and the prosecutor's rebuttal. When the defense finally did object, the court ruled that the prosecutor's argument was less cause for curative instruction than defense counsel's own argument. In sum, both from reviewing the record and from reconstructing the circumstances at trial, it appears that the prosecutor's improper statement was isolated, unemphasized, and unlikely to have been prominent in the minds of the members of the jury. There is no reason to believe that this isolated remark would affect the jurors in such a way that they would be unable to appraise the evidence in a fair and objective manner.

We believe that the trial judge acted properly in declining to give a corrective instruction. Defense counsel's objection came long after the remark had been made. The court could reasonably have felt that issuing a specific cautionary instruction at that point would have unnecessarily drawn the jurors' attention to a remark to which they may not have paid any special attention, and one which could not fairly be pointed out without also pointing out a very similar remark made by the defense. The court's obvious conclusion that it was a wiser course to repeat clear, general instructions spelling out the proper role of the jury than to issue specific curative instructions highlighting the prosecutor's error was not an abuse of discretion under the circumstances of this case. *See Patriarca v. United States,* 402 F.2d 314, 322 (1st Cir.1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969).

The fourth criterion, the strength of the government's case, is one that has been heavily emphasized by this and other courts. In *Young,* 105 S.Ct. at 1049, the Court said:

> The overwhelming evidence of respondent's [guilt] eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations or exploited the government's prestige in the eyes of the jury. Not a single witness supported respondent's asserted defense ... and several witnesses flatly rejected such a proposition.... Under these circumstances, the substantial and virtually uncontradicted evidence of respondent's willful violation provides an additional indication that the prosecutor's remarks, when reviewed in context, cannot be said to undermine the fairness of the trial and contribute to a miscarriage of justice.

---

3. In *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Supreme Court held that convictions may not be reversed to deter prosecutorial misconduct if the misconduct constituted harmless error. The Court said that in the case before it, the court of appeals "appears to have decided to deter future similar comments by the drastic step of reversal of these convictions. But the interests preserved by the doctrine of harmless error cannot be so lightly

and casually ignored in order to chastise what the court viewed as prosecutorial overreaching." *Id.* at 507, 103 S.Ct. at 1979. The Court noted that there are other methods of dealing with prosecutorial misconduct, including asking the Department of Justice to initiate disciplinary proceedings.

4. Counsel for the appellee was not the government attorney at trial.

*See also United States v. Cox,* 752 F.2d at 746, and *United States v. Capone,* 683 F.2d at 587.

In this case, the government presented strong, uncontroverted evidence that the defendant received government funds which she was not properly eligible to receive and that she concealed her lack of eligibility by failing to report her ownership in a home and her employment by Blue Cross/Blue Shield of Massachusetts. The fact that she repeatedly misreported information and that she used one name while working and buying a home and a different name while applying for benefits, as well as the calculated manner in which she deposited and transferred monies between checking accounts, all support the proposition that she acted willfully. In sum, the evidence against the defendant on the count as to which she was convicted is very strong.

It is true that the jury acquitted the defendant of making false statements while convicting her of stealing government funds, but it is not difficult to reconcile the verdicts on the various counts. The jury could well have felt that the government failed to carry its burden to prove beyond a reasonable doubt that the defendant willfully made false statements, while at the same time, believing that the government did meet its burden in proving theft. The evidence of theft goes beyond the evidence of willful false statement, and includes the defendant's peculiar use of checking accounts and the uncontroverted evidence that she used one name while applying for and receiving benefits and a different name while working and buying a home. In short, the fact that the jury acquitted on some counts does not make the case against the defendant on the remaining count any less strong. In fact, in *Young,* the Supreme Court pointed to the jury's mixed verdict as evidence that the prosecutor's remarks did not undermine the jury's ability to view the evidence fairly. 105 S.Ct. at 1048 n. 15.

We believe that the evidence against the defendant was very strong and that in the context of this case it is clear beyond a reasonable doubt that the prosecutor's improper statement did not affect the fairness of the trial.

*Accordingly, we affirm the judgment of the district court.*