# United States Court of Appeals
## For the First Circuit

No. 08-1820

UNITED STATES OF AMERICA,

Appellee,

v.

NATANAEL DE LA PAZ-RENTAS, a/k/a NATO,

Defendant, Appellant.

_____

No. 08-1821

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR SANJURJO-NUNEZ,

Defendant, Appellant.

_____

No. 09-1397

UNITED STATES OF AMERICA,

Appellee,

v.

PEDRO MOLINA-BONILLA,

Defendant, Appellant.

_____

No. 09-1639

UNITED STATES OF AMERICA,

Appellee,

v.

WALDEMAR TORRES-GONZALEZ, a/k/a WALDY,

Defendant, Appellant.
_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before
Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Anita Hill Adames, by appointment of the court, for appellant Pedro Molina-Bonilla.

Rafael Anglada-Lopez, by appointment of the court, for appellant Natanael De La Paz-Rentas.

Jorge Luis Gerena-Mendez, by appointment of the court, for appellant Victor Sanjurjo-Nunez.

Steven A. Feldman, by appointment of the court, with whom Feldman and Feldman was on brief for appellant Waldemar Torres-Gonzalez.

Waldemar Torres-Gonzalez on brief pro se.

Thomas F. Klumper, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellee.

July 20, 2010

**BOUDIN**, **Circuit Judge**.  Before us are appeals by four defendants who were found guilty on firearms charges and, in one case, a drug charge, all of which stemmed from an undercover investigation into a weapons ring in Puerto Rico.  The four defendants are Pedro Molina-Bonilla ("Molina"), Natanael De La Paz-Rentas ("De La Paz"), Victor Sanjurjo-Nuñez ("Sanjurjo"), and Waldemar Torres-González ("Torres"). Each defendant challenges his conviction on several grounds.  Because several defendants challenge the sufficiency of evidence, we recite the facts as a reasonable jury could have found them.  See United States v. Baltas, 236 F.3d 27, 35 (1st Cir.), cert. denied, 532 U.S. 1030 (2001).

In August 2006, Officer Julio Ginés of the Puerto Rico Police Department was engaged in an undercover investigation of a weapons-dealing organization in Arecibo, Puerto Rico.  Sanjurjo, who was a municipal police officer, told Ginés during their second meeting that he knew some policemen who were engaged in illegal business.  Later, Sanjurjo introduced Ginés to Molina, who was also a municipal police officer, and told Molina that Ginés was interested in acquiring firearms.  A number of arms transactions then followed.

On October 11, 2006, Ginés met with Molina, De La Paz, and Molina's wife in a shopping mall parking lot in San Juan, where Ginés paid $1,700 to them for a .45 caliber pistol with an

-3-

obliterated serial number and two magazines loaded with bullets. On October 19, Ginés again met Molina in a parking lot seeking to purchase an AK-47 rifle from another supplier named Nelson Font-González ("Font"); Ginés brought Sanjurjo along with him and paid Sanjurjo $100 for protection. Font then called to say that he did not have the AK-47, but offered to sell three pistols instead, and sent defendant Torres with the guns. Ginés bought one pistol from Torres for $1,200.

Thereafter, Font arranged for many further firearms transactions with Ginés. Between November 2006 and March 2007, Ginés bought two AK-47 rifles, an AR-15 rifle, an H&K rifle, an SKS rifle, several pistols including a Glock pistol with a laser sight, and ammunition in various forms. In a final transaction on March 17, Font arranged to sell Ginés an automatic pistol and cocaine; Ginés testified that Font told him that both items belonged to Torres. At Font's house, Font sent another man to pick up the gun and drugs from Torres, and Ginés then paid $5,000 for the automatic Glock pistol and 1/8 of a kilogram of cocaine.

The defendants, Font, and several other individuals allegedly involved in the arms-dealing (including Molina's wife) were indicted based on these transactions. The four defendants who now appeal went to trial, and the jury returned guilty verdicts against all four:

-4-

● Sanjurjo was convicted of one count of aiding and abetting in the business of dealing firearms, 18 U.S.C. §§ 2, 922(a)(1)(A) & (D) (2006);

● De La Paz was convicted of:

-(1) one count of conspiring to unlawfully deal in firearms without a license, 18 U.S.C. §§ 371, 922(a)(1);

-(2) one count of aiding and abetting in the dealing in firearms without a license, 18 U.S.C. §§ 2, 922(a)(1)(A) & (D); and

-(3) one count of aiding and abetting the possession of a firearm with an obliterated serial number, 18 U.S.C. §§ 2, 922(k);

● Molina was convicted of:

-(1) one count of conspiring to unlawfully deal in firearms without a license, 18 U.S.C. §§ 371, 922(a)(1);

-(2) two counts of aiding and abetting in the dealing in firearms without a license, 18 U.S.C. §§ 2, 922(a)(1)(A) & (D); and

-(3) one count of aiding and abetting the possession of a firearm with an obliterated serial number, 18 U.S.C. §§ 2, 922(k); and

● Torres was convicted of:

-(1) one count of conspiring to unlawfully deal in firearms without a license, 18 U.S.C. §§ 371, 922(a)(1);

-(2) one count of aiding and abetting in the dealing in firearms without a license, 18 U.S.C. §§ 2, 922(a)(1)(A) & (D);

-(3) one count of aiding and abetting in the possession of a machine gun, 18 U.S.C. §§ 2, 922(o);

-(4) one count of aiding and abetting in carrying a firearm during and in relation to the commission of a drug trafficking crime, 18 U.S.C. §§ 2, 924(c);

-(5) one count of aiding and abetting in the possession with intent to distribute a controlled substance (cocaine), 18 U.S.C. §§ 2, 841(a)(1); and

-(6) two counts of possessing a firearm while a convicted felon, 18 U.S.C. §§ 922(g), 924(a)(2).

The district court sentenced Sanjurjo to 10 months; De La Paz to 48 months; Molina to 60 months; and Torres to 408 months, comprising 360 months on the count of carrying a firearm during and in relation to a drug trafficking crime and concurrent terms of 48 months on the other counts running consecutive to the 360-month sentence. The defendants now appeal, raising a variety of different challenges.

Sanjurjo. Sanjurjo first argues the district court should have granted his Rule 14 requests to sever his trial. Fed. R. Crim. P. 14. We review a district court's denial of a motion to sever for manifest abuse of discretion, United States v. DeLuca, 137 F.3d 24, 36 (1st Cir.), cert. denied, 525 U.S. 874 (1998), and the presumption and common practice favor trying together defendants who are charged with crimes arising out of a common core of facts, United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993).

Sanjurjo's main argument is that he was charged with only a minor role in the October 19 transaction and that the jury's assessment of whether he participated would be contaminated by the extensive other evidence about the other defendants and the arms-dealing conspiracy. Such a "spill-over" threat can be ground for severance, e.g., Zafiro v. United States, 506 U.S. 534, 539 (1993); but it has to be based on a fact-specific serious risk of prejudice, United States v. DeLeon, 187 F.3d 60, 63 (1st Cir.), cert. denied, 528 U.S. 1030 (1999).

Sanjurjo played an intermediary role prior to the forming of the conspiracy, and was convicted--solely on an aiding and abetting charge--for serving as a bodyguard in the second transaction. Although the subsequent gun dealings were substantial and Sanjurjo seemingly played no further role beyond his initial involvement, there was no reason for the jury to be confused about his role. Nor were the subsequent transactions likely to inflame or to confuse a jury.

The district court not only instructed the jury generally that it had to consider the charges and evidence against each defendant separately, but also emphasized that Sanjurjo himself was not charged with conspiracy and that the jury therefore "must carefully evaluate the evidence as to this defendant"--a partial safeguard against possible "spillover." DeLeon, 187 F.3d at 64. The jury, we note, acquitted Molina's wife on two of the three

charges against her.  See United States v. Boylan, 898 F.2d 230, 246 (1st Cir.), cert. denied, 498 U.S. 849 (1990).[1]

Sanjurjo also argues that his motions for acquittal based on lack of sufficient evidence should have been granted, Fed. R. Crim. P. 29.  We review sufficiency claims de novo, United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2005), but we view the evidence "in the light most favorable to the prosecution" along with "all plausible inferences drawn therefrom," and ask if no rational jury applying a reasonable doubt standard could have found the defendant guilty, Baltas, 236 F.3d at 35.

The aiding and abetting conviction was based on Ginés' testimony that at the October 19 transaction Sanjurjo had been paid $100 to serve as a bodyguard and that Sanjurjo stayed inside Ginés' car throughout this transaction.  Sanjurjo says that this amounts to a conviction for "mere presence," but a bodyguard's presence can by itself facilitate a transaction,  cf. United States v. Martinez, 479 F.2d 824, 828 (1st Cir. 1973); the mere presence concept aims to protect innocent bystanders, see United States v. Ortiz, 966 F.2d 707, 712 (1st Cir. 1992), cert. denied, 506 U.S. 1063 (1993). Sanjurjo also denies knowing that guns were to be sold, but the

---

[1] Sanjurjo also argued below that joinder deprived him of the chance to have Molina testify for him, but such arguments are not usually successful, see United States v. Catalán-Roman, 585 F.3d 453, 461-62 (1st Cir. 2009); United States v. Smith, 46 F.3d 1223, 1231 & n.3 (1st Cir. 1995), and this one is not pressed on appeal.

jury was free to credit Ginés testimony that he had discussed with Sanjurjo in advance the plan to buy an AK-47.

De La Paz. De La Paz first claims that his case should have been severed given his limited connection to the succession of sales, but Ginés testified that De La Paz was the one who actually sold Ginés the gun on October 11. Others were also charged in the October 11 transaction, and it made sense to try De La Paz with them, absent a significant risk of prejudice which has not been demonstrated. De La Paz hints that joinder prejudiced him by depriving him of testimony from co-defendants Molina and Molina's wife, see note 1, above, but the argument was not made in the district court and is not seriously developed on appeal.

De La Paz also argues that jury selection violated the Sixth Amendment because, by statute, individuals must understand and be literate in English to serve on a federal jury and many Puerto Ricans cannot meet that requirement. See 28 U.S.C. § 1865(b)(2), (3) (2006). Apart from De La Paz' failure to preserve the claim, this court has repeatedly rejected this challenge to the English proficiency requirement, e.g., United States v. Aponte-Suarez, 905 F.2d 483, 491-92 (1st Cir.), cert. denied, 498 U.S. 990 (1990), decisions which control here, United States v. Rodríguez-Vélez, 597 F.3d 32, 46 (1st Cir. 2010).

Finally, De La Paz says that the evidence was insufficient because the only evidence against him was the

testimony of Ginés, who met De La Paz only once, in a 35-minute interaction in the late afternoon, inside a vehicle. But testimony from one witness can support conviction, e.g., United States v. Torres-Galindo, 206 F.3d 136, 140 (1st Cir. 2000), and De La Paz gives us no serious reason to doubt Ginés' testimony. Furthermore, phone records show calls between De La Paz and Molina that corroborate Ginés' account of De La Paz' involvement.

Molina. Molina, in the stronger of two challenges, argues that certain remarks the prosecutor made during the government's rebuttal closing arguments were improper and were so prejudicial as to warrant a new trial. Specifically, Molina complains about the following five statements the prosecutor made (listed in the order in which they were said):

- "This is a Heckler & Koch semi-automatic assault rifle. Look at the size of that barrel."

- "Victor Sanjurjo sold his badge out. He sold it out. He put a tape over 'Protect and Serve' and he decided he was going to serve his only [sic] interest for a hundred bucks. He sold himself out. He compromised the very principles he was hired to represent for a hundred bucks."

- "It's a fully automatic Glock, ladies and gentlemen. This will shoot in automatic capacity. The evidence presented in court had been that you pull the trigger once and it will empty the magazine--da-da-da-da-da-da-da, or faster."

- "First of all, ask yourselves what are two Morovis police officers doing in the first place at Marshalls? . . . They weren't

-10-

protecting and serving society. They were protecting and serving themselves. And who protects citizens from them?"

● "Your chance today right now is to do justice, and justice is nothing more than on the highway there comes an intersection between the truth and the ability to do something about it."

Objections timely made to a prosecutor's comments are reviewed de novo, United States v. Ayala-García, 574 F.3d 5, 16 (1st Cir. 2009), under accepted standards;[2] unpreserved objections are reviewed for plain error, United States v. King, 554 F.3d 177, 181 (1st Cir.), cert. denied, 129 S. Ct. 2169 (2009), requiring clear error, a reasonable likelihood of a different result, and something akin to a miscarriage of justice, United States v. Olano, 507 U.S. 725, 734-36 (1993).

Here, the objections came not from Molina's counsel, but rather from counsel for his wife. But the government does not raise this point, possibly because sometimes a trial judge allows an objection by one defendant to apply to all defendants. See United States v. Pinillos-Prieto, 419 F.3d 61, 70 n.9 (1st Cir.),

_____

[2] For preserved objections, reversible error will be found "only if we find that the prosecutor's remarks were both inappropriate and harmful." United States v. Laboy-Delgado, 84 F.3d 22, 29 (1st Cir. 1996) (internal quotation marks omitted). Harm depends on "the totality of the circumstances, including the severity of the misconduct, the prosecutor's purpose in making the statement (i.e., whether the statement was willful or inadvertent), the weight of the evidence supporting the verdict, jury instructions, and curative instructions." United States v. Glover, 558 F.3d 71, 76 (1st Cir. 2009) (internal quotation marks omitted).

<u>cert. denied sub nom.</u> <u>Rodriquez-Zamot</u> v. <u>United States</u>, 546 U.S. 1070 (2005). Defense counsel lodged immediate objections to the first and last comments quoted above, but not the others, and our review reflects the standards described above.

It is "improper to needlessly arouse the emotions of the jury," and that "misconduct occurs when a prosecutor interject[s] issues having no bearing on the defendant's guilt or innocence and improperly appeal[s] to the jury to act in ways other than as dispassionate arbiters of the facts." <u>Ayala-García</u>, 574 F.3d at 16 (internal quotation marks omitted). By this test, the first comment was improper: the fearsomeness of the weapon had nothing to do with Molina's guilt or innocence and, by contrast, had some capacity to frighten the jury and to re-direct that fear as anger against the defendant.

Further, the prosecutor apparently accentuated the impression. Molina says that during the challenged remark about the "size of that barrel," the prosecutor threw the gun against the table and pointed the gun at the jury, and the transcript of the relevant bench conference supports this account. (The transcript also confirms that the judge told the prosecutor not to repeat this conduct and that the prosecutor promised to refrain.) So we conclude that the prosecutor's conduct was improper, and the question is whether it was harmful.

-12-

Here, it was the manner of presenting the evidence and not the evidence that was improper. The rifle itself was an exhibit and could be shown to the jury even though the jury might react negatively to it. Amid the array of weaponry discussed and offered in evidence at the trial, a reference to the size of the barrel of one of them, even a vivid and improper demonstration of its size, cannot have created any significant risk of altering the outcome in this case, cf. United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir. 1987), because the case against Molina was comparatively strong and the defense was almost non-existent.

Although the prosecution case rested primarily on the testimony of Ginés, he was a police officer, not a co-conspirator whose testimony was purchased in a plea bargain, and Molina gives no reason why the jury should have distrusted Ginés' detailed testimony. Molina had more than one encounter with Ginés, so mistaken identity was hardly likely. The government also offered corroborative evidence, such as the firearms, phone records of calls to and from Molina at the critical times, and a videotape of the October 19 transaction in which Ginés identified Molina when it was played for the jury.

Molina's defense offered little beyond a naked denial through counsel--Molina presented no witnesses--that he had engaged in gun dealing. The case is in sharp contrast to Ayala-García where more menacing comments about weaponry were found to be

-13-

improper and, in addition, the likelihood of a different outcome absent the prejudicial remarks was greatly heightened by the "quite unusual" presence of a "forceful and well developed" defense supported by a number of witnesses.  574 F.3d at 23-24 (Boudin, J., concurring).

The fifth statement, to which objection is also taken, is troubling, but less so.  The "do your duty" rhetoric, depending on wording and context, can be used to convey the idea to the jury that their job is to convict.  E.g., United States v. Andújar-Basco, 488 F.3d 549, 561 (1st Cir. 2007)(exhortation to do "your duty as jurors" improper).  The government does not defend the improper remark, but it was brief, entirely abstract, and by no means the worst of its genre.  Even by preserved error standards, see note 2, above, the error was harmless.

All three of the comments that were not objected to are also improper.  The third comment, about the Glock automatic, is improper for the same reason as the first; and the image offered by language, along with the prosecutor's juvenile sound effects, was at least as bad.  But under Olano, plain error requires a reasonable likelihood that the result would have been different without the challenged comments, and comparing the government's case with Molina's defense, no such probability is even arguably established.

The same considerations dispose of the second and fourth comments, which were not the subject of objections. Both focused on the treachery of a renegade police officer who betrays his oath to protect the public; but the defendants were not on trial for dereliction of duty and the prosecutor had no business inviting the jury to focus on this aspect of their wrongdoing. Yet the more vivid remark was directed at another defendant; and neither, even in combination with the other remarks, meets the plain error standard for reversal.

The Puerto Rico U.S. Attorney's Office has developed an unenviable reputation for the excesses of its prosecutors in closing arguments. E.g., Ayala-García, 574 F.3d at 22; Andújar-Basco, 488 F.3d at 561 n.5. This case is by no means the worst, but, given that the prosecutor continued his improprieties after a warning from the judge at sidebar, we think this prosecutor's behavior was especially deplorable. The failure of his office properly to train and to discipline its prosecutors is even more troubling. The matter will be raised by appropriate means with the Department of Justice. United States v. Hasting, 461 U.S. 499, 506 n.5 (1983).

Molina also asks for a new trial because the government allegedly failed to disclose impeachment evidence. See, e.g., Giglio v. United States, 405 U.S. 150, 153-54 (1972); Brady v. Maryland, 373 U.S. 83 (1963). Molina complains that the government

failed to disclose that one of Ginés' supervisors was the target of a federal grand jury investigation (the supervisor was apparently indicted for fabricating evidence) and that several administrative complaints had been made against another of Ginés' supervisors.

Whether any information was "suppressed" is far from clear. The first supervisor was indicted four months after Molina's trial, and it is uncertain whether he was under investigation at the time of trial. Information about the other supervisor was submitted by the government for in camera review, and the district court then determined that these files did not need to be disclosed.

In any case, the information has not been not shown to be material. It had nothing to do with Ginés or any aspect of his testimony, and could not be used to impeach Ginés' credibility. In fact, there is no indication that either supervisor played a significant role in this investigation. Thus, there was no abuse of discretion in denying the motion for a new trial, the applicable standard in this case. See United States v. Brandao, 539 F.3d 44, 64 (1st Cir. 2008).

Torres. Torres first challenges the sufficiency of the evidence that he aided and abetted the carrying of a firearm during and in relation to a drug trafficking crime. 18 U.S.C. §§ 2, 924(c)(1), (2). This crime carries a 30-year minimum sentence where, as here, the firearm involved was a machine gun. Id. §

924(c)(1)(B). The charge arose from the March 17 transaction during which, according to Ginés' testimony, Font brokered the sale of Torres' automatic Glock and an eighth of a kilogram of cocaine.

To convict Torres, the government had to show that the gun was carried "during and in relation to" a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). This phrase has been interpreted capaciously, see, e.g., United States v. Roberson, 459 F.3d 39, 48-49 (1st Cir. 2006), cert. denied, 549 U.S. 1214 (2007), but still requires at a minimum evidence that the firearm had "some purpose or effect with respect to the drug trafficking crime," Smith v. United States, 508 U.S. 223, 238 (1993). The government on appeal concedes that the evidence of such a relationship was inadequate.

The March 17 transactions also led to Torres being convicted separately for (1) aiding and abetting in the possession of a machine gun and (2) aiding and abetting in the possession with intent to distribute cocaine. Torres says he did not deal personally with Ginés on March 17 and that the only evidence connecting him with the transaction is that Font (who physically did the deal) said "Waldy" (Torres' first name) was the owner of the gun and drugs and that Font made several calls to "Waldy" about the sale in Ginés' presence.

Font did not testify at trial, and Ginés admitted that he could not know for sure whether those calls actually were made to someone named "Waldy" or whether this "Waldy" was in fact Torres.

-17-

But the phone records showed several March 17 calls between Font and Torres.[3]  Also, Ginés testified that he was told Torres could not be at the March 17 transaction because Torres was going to a concert; at trial, Torres' girlfriend confirmed that she and Torres attended a concert that day.

Of course, this might still look thin if it stood alone, but more substantial evidence showed that Torres was involved in other arms deals with Ginés and Font.  This substantially strengthens the inference that Font was talking to Torres and was accurately reporting Torres' ownership (and impliedly his agreement) in the transfer of the properties through Font to Ginés.  Font's own statements, reported by Ginés, were (as we explain next) admissible under the co-conspirator exception to the hearsay rule, and the jury could conclude beyond a reasonable doubt that Torres was the supplier of both items.

In a pro se brief, Torres argues that the admission of Ginés' testimony about what Font said violated his constitutional rights under Crawford v. Washington, 541 U.S. 36 (2004), and Bruton v. United States, 391 U.S. 123 (1968), and that the district court should have instructed the jury that Font's "confession" was not admissible against the other defendants, cf. Richardson v. Marsh,

---

[3] Torres urges that he and Font often called one another, so the phone calls on March 17 mean little.  But frequent phone calls might make one more inclined to think that the "Waldy" on the phone was Torres; in any event, the jury was entitled to draw the inference it did from the evidence.

481 U.S. 200, 211 (1987). Neither Crawford nor Bruton (nor the claim that Font's statement was a "confession") were raised below, but in any case neither citation helps Torres.

Crawford does not apply to statements deemed non-testimonial, and statements made in furtherance of a conspiracy "by their nature [are] not testimonial." 541 U.S. at 56; United States v. Sánchez-Berríos, 424 F.3d 65, 75 (1st Cir.), cert. denied sub nom. Cruz-Pagan v. United States, 546 U.S. 1125 (2005). The Court has stated that a "testimonial" statement is one made under circumstances that "objectively indicate" that the statement's primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006). Font's statements were not testimonial.

As for Bruton, it is concerned with the indirect impact on a defendant of a confession made by another defendant in a joint trial, 391 U.S. at 126, 137; it does not bar the use of a co-conspirator statement made in furtherance of the conspiracy and admissible under a traditional hearsay exception,[4] Dutton v. Evans, 400 U.S. 74, 85-86, 90 (1970) (plurality opinion); Bruton, 391 U.S. at 128 n.3; Sanchez-Berrios, 424 F.3d at 75-76. And because Font's

---

[4] A conventional hearsay objection was made in the district court, but the district court ruled that Font's statements satisfied the co-conspirator exception, Fed. R. Evid. 801(d)(2)(E), and that ruling is not challenged on appeal.

statements were admissible against Torres as co-conspirator statements, there was no warrant for giving a limiting instruction.

Torres also argues that his conviction for aiding and abetting possession of a machine gun, 18 U.S.C. §§ 2, 922(o), was improper because the judge rather than the jury decided that the Glock qualified as a machine gun. By cross-reference, the Criminal Code includes as a "machine gun" any firearm, whether or not fitting the conventional image of a machine gun, that can discharge more than one bullet with a single pull of the trigger. 18 U.S.C. § 921(a)(23)(cross-referencing 26 U.S.C. § 5845(b) (2006)).

In fact, the jury was instructed as to the statutory definition and told that to convict under section 922(o), it had to find that the government proved that Torres "knowingly possessed a machine gun" and "knew or was aware of the essential characteristics of the firearm which made it a machine gun," which is an accurate rendition of the elements. See, e.g., United States v. Nieves-Castaño, 480 F.3d 597, 599 (1st Cir. 2007).

Torres also contests the reasonableness of his 408-month sentence and, in his pro se brief, argues as well that the government engaged in sentencing entrapment and manipulation by requesting that drugs be sold in connection with an automatic weapon to trigger a 30-year minimum sentence representing most of the 408 months. But 360 months of the sentence reflected a conviction we are reversing, and Torres does not claim that the 48

months for the separate drug and gun offenses is unreasonable or that he was entrapped into those separate offenses.

Finally, Torres tries to join in the arguments his co-defendants make on appeal. There is a procedure to do so, Fed. R. App. P. 28(i), although the appellant must "connect the arguments adopted with the specific facts pertaining" to him. United States v. Bennett, 75 F.3d 40, 49 (1st Cir.), cert. denied sub nom. Lussier v. United States, 519 U.S. 845 (1996). Torres' attempt to do this in his reply brief may come too late. United States v. Quirindoqno-Collazo, 213 F. App'x 10, 11 (1st Cir. 2007) (per curiam). Anyway, no error occurred as to the other defendants.

The judgments are affirmed, save that Torres' conviction under section 924(c)(1)(B) and the companion 30-year sentence are vacated and his case is remanded for re-sentencing.

It is so ordered.